IN THE UNITED STATES DISTRICY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

HENRY TY MCGOWAN,
    Plaintiff,

vs.

CITY OF LA VERGNE, TENNESSEE,
    Defendant.

Civil Action No. _____
JURY DEMAND

# COMPLAINT

Come now the Plaintiff and sues the Defendant, City of La Vergne, Tennessee as follows;

1. The Plaintiff is a citizen and resident of Rutherford County, Tennessee. His race is African American, black;

2. The Defendant is a municipal government entity organized under the laws of the State of Tennessee and located in Rutherford County, Tennessee. It operated a police department in which the Plaintiff was employed by the City of La Vergne, Tennessee.

3. The Plaintiff was employed by the City of LaVergne, Tennessee at the at the La Vergne Police Department ("LPD") for many years. His last job and title were Sergeant.

4. Plaintiff files this suit pursuant to 42. U.S.C.A 2000e et seq for unlawful race discrimination and retaliation. Plaintiff also sues pursuant to the Tennessee Human Rights Act for unlawful race discrimination and retaliation;

5. The Plaintiff has exhausted his administrative remedies and received a Right to sue letter on November 20, 2023, Attached to this Complaint;

6. The City of La Vergne Tennessee is an employer in Tennessee with more than 50 employees;

7. Jurisdiction is proper pursuant Tennessee 28 U.S.C.A 1331. This court has supplemental jurisdiction over his state law claims based on 28 U.S.C. Section 1367;

8. Mr. McGowan was an exemplary employee who worked, received promotions, and received accolades in his work performance. Mr. McGowan, during his employment, had significant contact and interaction with Jason Cole, the Mayor of LaVergne, Tennessee.

9. McGowan's contact with the mayor was through social media messaging and text messaging. They often exchanged messages about work related issues at the LaVergne Police Department;

10. Mayor Cole was intricately involved in the dealings and issues inside the LaVergne Police Department. It was not unusual for McGowan to talk directly with Mayor Cole about matters in the LPD;

11. Along those lines, in December 2022, McGowan had concerns about a proposed promotion of another employee at the LPD;

12. Mr. McGowan communicated his concerns with Mayor Cole about this proposed promotion. Mayor Cole directed him to contact and meet Andrew Patton, the City of LaVergne Human Resources Director. McGowan was unaware that each had a totally different purpose for said meeting;

13. Mr. McGowan's intent was to discuss a recent promotion issue with Mr. Patton as and express his concerns. But Mr. Patton and possibly, at the mayor's direction, instead began asking questions about Maegan Hall and others who were being investigated related to sexual activity inside the LPD;

14. Mr. McGowan was surprised that the conversation as it was not about why he sought the meeting, but answered all his questions and eventually provided him information to his knowledge of the sexual issues with Ms. Hall and other inside the LPD;

12. At all times, Mr. McGowan denied and still denies ever having a sexual relationship with Maegan Hall at work or otherwise;

13. McGowan's relationship was a professional one and a friendly relationship which involved friendly bantering;

14. Ms. Hall, on the other hand, sought and solicited an explicitly sexual relationship from Mr. McGowan. Some of his communications with her were light bantering and humoring to her, but at no time did he seek, receive, or have a sexual relationship with Meagan Hall;

15. An investigation was begun in December 2022 by Andrew Patton. From the start, it was obvious to McGowan that the LPD purpose in the investigation was to blame individual employees of the Hall behavior while protecting itself from exposure by misleading and not being truthful about the involvement of at least McGowan;

16. Mr. McGowan was accused of allegedly "intimidating" an employee in the HR department. This allegation was untrue and had absolutely no basis. Its sole purpose was to provide the Defendant with an additional untrue pre-textual reason to terminate McGowan in addition to the conclusions that he had a sexual relationship with Hall, which he denies;

17. Mr. McGowan, along with others were terminated from his position allegedly because of sexual activity between himself and Maegan Hall, the alleged intimidation and for other reasons;

18. All these reasons for McGowan's termination were false and none of the events that are described in the reasons for his termination occurred or occurred in the ways alleged. At

all times during this investigation that led to his termination, McGowan cooperated fully and provided all information he had requested of him and was truthful;

19. But, through the investigation, there was no proof of active sexual activities between Mr. McGowan and Maegan Hall except what she said that corroborated her allegations unlike other LPD employees she claimed to have sex with;

20. Hall did have sex with other LPD employees, but not Mr. McGowan. While it is true, Ms. Hall has alleged there was sex between her and McGowan, it was denied by McGowan;

21. The communications between the two support McGowan's version wherein Hall solicited sex from him, and he never agreed to and only humored her or put her off. Despite the clear indications from the communications that there was no sexual activity between McGowan and Hall, Patton and the Defendant terminated him anyway for these reasons allegedly;

22. Patton though, it seems, did not believe Mr. McGowan or did not like the information he provided. McGowan had previously warned Hall that her sexual activity outside work with other employees could result in problems for her. She responded by then claiming McGowan was also after her as well sexually and for sexual favors. But it is believed that Ms. Hall knew these were problems for her. So, the best way for her to insulate herself from blame and blame to the Defendant was by alleging the people who were her supervisors and some she thought could discipline here were the people who wanted to and had sex with her;

23. Mr. McGowan, as his race is black, while not the only black police officer disciplined, he was the only one initially disciplined where there was no corroboration that he had a sexual encounter with Ms. Hall other than her allegations;

24. Mr. McGowan as a black employee was terminated because of his race and was fired in retaliation for failing to provide information Defendant wanted from him to implicate

others. Chief Davis, a black employee, was terminated and Lewis Powell a black employee was also terminated through this investigation(s) (there was a subsequent investigation involving Chief Davis where he was terminated). But, a white employee, who admitted having sexual relations with Hall and was likewise a subject of this initial investigation, was not terminated but rather suspended and allowed to remain employed. These black employees were fired and treated differently because of their race. A white employee who admitted to more wrongdoing than McGowan was not fired and retained his employment. Clearly, Mr. McGowan was treated differently and subjected to greater scrutiny during the investigation than his white counterparts because of his race;

25. The actual reasons and Defendant's motivation for terminating him included his race and as retaliation against him for making a complaint related to a promotion and not providing more "dirt" on the police chief and others;

26. The decision to terminate Mr. McGowan was due solely to his race and retaliation as described herein.

## COUNT 1

**VIOLATIONS OF 42 U.S.C.A SECTION 2000e et seq.; Race Discrimination.**

27. Plaintiff incorporates by reference all allegations contained in paragraphs 1-26 as if fully stated herein;

28. Plaintiff filed a complaint with the Equal Employment Opportunity Commission and on November 20, 2023, received a right to sue letter to file a lawsuit within ninety (90) days;

29. Plaintiff McGowan's race is black and a racial minority who falls within the class of minorities protected by Title VII (42 USCA Section 2000e, et seq);

30. Title VII's proscribes that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e– 2(a)(1);

30. Plaintiff McGowan was terminated by Defendant due to his race. This adverse employment action was taken against him due to his race. McGowan was subjected to a different standard and a higher level of scrutiny than that was applied to the white officers in the same investigation in ways that include he was terminated, retaliated against and had false accusations filed against him, and a white employee was not for the same alleged conduct. Officers of other races were not treated the same.

31. As a result of being terminated due to his race, McGown rights as established in Title VII were violated as it is illegal to terminate an employee on account of their race;

32. As a result and proximate result of being terminated due to his race and violations of federal and state law, the Plaintiff has suffered damages. These damages include economic damages such as lost pay, damages to his reputation, emotional distress, mental suffering, and loss of enjoyment of life and all other damages allowed by Tennessee or federal law;

## COUNT 2

**VIOLATIONS OF TENNESSEE HUMAN RIGHTS ACT; Race Discrimination.**

33. Plaintiff incorporates by reference all allegations contained in paragraphs 1-32 as if fully stated herein;

28. Plaintiff filed a complaint with the Equal Employment Opportunity Commission and on November 20, 2023, received a right to sue letter to file a lawsuit within ninety (90) days;

29. Plaintiff McGowan's race is black and a racial minority who falls within the class of minorities protected by the Tennessee Human Rights Act, Tenn. Code Section 4-21-401, et seq

30. The THRA provides that it is unlawful for an employer "to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401(a)(1);

30. Plaintiff McGowan was terminated by Defendant due to his race. This adverse employment action was taken against him due to his race. McGowan was subjected to a different standard and a higher level of scrutiny than that was applied to the white officers in the same investigation in ways that include he was terminated and a white employee was not for the same alleged conduct.;

31. As a result of being terminated due to his race, McGown rights as established by Tennessee law were violated as it is illegal to terminate an employee on account of their race;

32. As a result, and proximate result of being terminated due to his race and violations of federal and state law, the Plaintiff has suffered damages. These damages include economic damages such as lost pay, damages to his reputation, emotional distress, mental suffering, and loss of enjoyment of life and all other damages. Allowed by Tennessee or federal law;

# COUNT 3.

## THE ACTIONS AND BEHAVIORS OF THE DEFENDANT CONSTITUTE RETALIATION IN VIOLATION OF FEDERAL AND TENNESSEE LAW.

33. Plaintiff incorporates by reference all allegations contained in paragraph 1 through 32.

34. As detailed above and as discovery may reveal, the Defendant heard allegations of a potential problematic promotion and undertook an investigation into the sexual affairs of Meagan Hall and others;

35. During this investigation, the Defendant, through its HR Department, interviewed employees including Plaintiff. The Defendant also sought other information from Plaintiff;

36. Plaintiff cooperated with the investigation, but, based on belief, Defendant either wanted more details from McGowan or expected more details from McGowan. McGowan through the investigation denied claims of Hall related to sex. Defendant then based on belief had a HR employee make an untrue allegation of intimidation related to the ongoing investigation to create a reason to terminate McGowan. An act of retaliation;

37. The Defendant terminated the Plaintiff also, in addition due to his race, in retaliation for and against him for what is believed to be perceived as McGowan not cooperating or providing them the information they wanted or did not like the information provided and was not happy about McGowan raising the issue about the promotion of another employee. The alleged intimidation complaint was also a pretextual reason created in retaliation against him for his actions during this investigation.

38. As a result, and proximate result of being terminated due to retaliation, his race and violations of federal and state law, the Plaintiff has suffered damages. These damages include economic damages such as lost pay, damages to his reputation, emotional distress,

mental suffering, and loss of enjoyment of life and all other damages. Allowed by Tennessee or federal law;

**WHEREFORE, ALL PREMISES CONSIDERED,** the Plaintiff request the relief requested above and the following:

1. That process be issued, and the Defendants be required to answer in the time required by law.

2. That the Plaintiff are awarded a judgment against the Defendant for all damages as result of the violations of federal law, Tennessee law, retaliation and all other damages that proximately flow from the Defendant's illegal termination of Plaintiff. These damages to include all damages allowed by 48 U.S.C.A Section 2000e, et seq, retaliation claims, the Tennessee Human rights Act and common law including economic damages, lost wages, damages to reputation, damages for emotional distress and mental suffering including all reasonable lawyer fees, litigation costs and expert fees incurred to prosecute this case.

3. The Plaintiff demands $1,000,000.00 in compensatory damages.

3. That Plaintiff be given a jury trial on all issues.

5. The Plaintiff request that he be awarded a judgment for all reasonable attorney fees incurred from having to file this matter and that the Defendant be required to pay all costs in this action.

6. That the Plaintiff be awarded any additional relief the Court deems just and proper.

/s/ Jay B. Jackson
JAY B. JACKSON, BPR# 016745
Attorney for Plaintiff
MITCHELL & MITCHELL
Attorneys at Law
106 East College Street
P.O. Box 1336
Murfreesboro, TN 37133-1336
(615) 896-4211

## SURETY

I agree to act as surety for the costs in this cause.

/s/ Jay B. Jackson
Jay B. Jackson